UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-194-GWU

| | | |
|---|---|---|
| KAREN S. WILLIAMS, | | PLAINTIFF, |
| VS. | **MEMORANDUM OPINION** | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | | DEFENDANT. |

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

    Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

  Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Karen S. Williams, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment due to diabetes mellitus. (Tr. 20). Nevertheless, based in part on the testimony of a Medical Expert (ME) and a Vocational Expert (VE), the ALJ determined that Mrs. Williams retained the residual functional capacity to perform her past relevant work as a cashier, glass inspector, waitress, and cook, and therefore was not entitled to benefits. (Tr. 22-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the VE testified that the plaintiff's past jobs, which he described as cashier, cook, inspector/trimmer, and waitress, could all be performed at the "light" exertional level except for the position of cook, which was "medium." The court concludes that the ALJ's conclusion that the plaintiff could perform the full range of medium level exertion is supported by substantial

evidence. Therefore, she did not carry her burden of showing that she could not return to her past relevant work.

Mrs. Williams alleged disability due to diverticulosis, diabetes, and "cancer cells in uterus." (Tr. 69). She testified that her last work was in 1999, trimming glass, although she had not filed for disability until October, 2004. (Tr. 211). She had been forced to stop work because of diverticulitis, which forced her to take frequent bathroom breaks, and no treatment that she had tried had been effective. (Tr. 211-12). She had been diagnosed with diabetes in October, 2004, and was taking oral medication. (Tr. 213). Regarding her other complaints, she testified that abnormal cells had been found in her uterus after surgery in 1997, but they had not come back. (Tr. 214). She also described arthritis, particularly in her hands and right knee, swelling in the knees, which she felt was caused by a leaky valve in her heart, and poor eyesight. (Tr. 217-18).

As the ALJ noted, there is no medical evidence from 1999 at the time the plaintiff stopped working. Records from Knox County Hospital show that Mrs. Williams was diagnosed with hyperglycemia, obesity, "tobacco use," and a yeast infection on October 19, 2004 and was given oral medication and told to exercise and follow a strict diabetic diet. (Tr. 112-13). She apparently received diabetic treatment from a family physician, Dr. Nancy Friday. Some of the office notes are undated, but they show that the plaintiff was prescribed oral medication for diabetes

and given medication for high cholesterol; her weight was given as 241 pounds in November, 2004. (Tr. 123-34). An electrocardiogram in October, 2004 was within normal limits (Tr. 114), and Dr. Friday obtained an echocardiogram on January 3, 2005 which showed "overall" good left ventricular systolic functioning with mild mitral and tricuspid regurgitation (Tr. 153).

A state agency physician who reviewed the evidence at this point concluded that the plaintiff did not have a "severe" impairment. (Tr. 155).

Subsequently, Dr. Friday submitted some additional office notes which appear to show no abnormalities on examination, although she continued to diagnose diabetes and hyperlipidemia along with dysfunctional uterine bleeding. (Tr. 171). She referred her patient to Dr. Rehana Begum for a colonoscopy on January 25, 2006. (Tr. 181). The reason given for the procedure was chronic diarrhea and a "history of colitis." The colonoscopy showed diffuse diverticulosis and internal hemorrhoids, but was otherwise normal. (Tr. 181-2). The only recommendation was a high-fiber diet. (Tr. 182).

Dr. Friday submitted a form dated February 1, 2006 stating that Mrs. Williams's diagnosis was extensive diverticulitis with colitis and, in her opinion, it would prevent her from performing full-time work. (Tr. 170). In fact, she opined that the plaintiff would miss 20 to 25 days a month.

The ALJ submitted the medical evidence to an ME, Dr. Edward Griffin, a specialist in internal medicine. (Tr. 192). Dr. Griffin noted a history of having abscesses drained, as well as type 2 diabetes which was managed by oral medications. (Tr. 190). The plaintiff was obese at slightly over 5 feet 5 inches with weight in the 240 to 250 pound range. He noted that the echocardiogram showed a normal ejection fraction and left ventricular wall motion, and in his opinion the colonoscopy showed no significant findings that would affect her ability to function. (Id.). Although it was difficult to make a longitudinal assessment with such a limited record, he felt that the evidence did not show that her diabetes had been optimally managed, nor had optimal efforts been made by the plaintiff's caregivers or the claimant herself to improve. (Id.). He felt that, considering her obesity, Mrs. Williams would be limited to a full range of light level work, with a significant potential for improvement if her diabetes was optimally managed. (Tr. 191). If the obesity was not felt to be a permanent impairment, she would be capable of a full range of medium work. (Id.).

The ALJ concluded that the opinion given by Dr. Friday was not supported by sufficient objective medical evidence and thus was not entitled to controlling weight. (Tr. 23). Given the sparse nature of Dr. Friday's office notes, the lack of objective findings either on physical examination or objective testing, and the extreme nature of the purported restrictions, the ALJ's conclusion is supported by

07-194 Williams

substantial evidence. It is significant that Dr. Friday never appears to have diagnosed diverticulitis prior to the colonoscopy, which is essentially the only objective evidence regarding the condition. The ME's interpretation of this evidence appears to be much closer to the objective findings. It would be remarkable if the plaintiff's colon condition had been causing her such difficulty that she would miss 20 to 25 days of work per month without there being any notation of this problem in the treating physician's notes. Accordingly, the ALJ's decision to reject the treating physician opinion is supported by substantial evidence.

The plaintiff also tangentially raises the issue of her obesity, but the ALJ's decision contains an extensive discussion of whether the obesity resulted in significant limitations under Social Security Ruling 02-1p. The ALJ reasonably concluded that there was no evidence that the obesity resulted in significant physical limitations or that it was not remediable. (Tr. 21). Therefore, there was no error in the ALJ's resolution of this issue.

The decision will be affirmed.

This the 11th day of March, 2008.



Signed By:

*G. Wix Unthank*

**United States Senior Judge**